Case number 18-2252, Kiesha Jones v. Jeh Johnson, et al. Argument not to exceed 15 minutes per side. Ms. Brock, you may proceed for the appellant. Good morning, Your Honors. Could you please assist the Court? I am Felicia Duncan Brock. I am counsel on behalf of plaintiff appellant Kiesha Jones. I would like to reserve five minutes for rebuttal. Does the Court require a recitation of the facts? No, Felicia. Okay, why did that work so well for a second? Do I need to? Oh. And I'll use my outside voice as well. If you're close to the mic, it's pretty clear. That's the difference. Give me some sort of sign if you can't hear me at some point. The appeal in this matter is an appeal of the district court's grant of a motion for summary judgment in a one-count, what is now a one-count, complaint. It is a complaint based on gender discrimination and a failure to promote context, which, of course, is important to the analysis that's to be used in examining the evidence in this complaint. Ultimately, this boils down to a discovery dispute and a discovery issue. We have several categories of discovery that the plaintiff appellant has been seeking repeatedly in this case and has repeatedly been denied in this case. Certainly, case law is clear that summary judgment is not – is inappropriate in an instance where the non-moving party has not had ample opportunity to conduct discovery. And Ms. Jones, in this case, argues and presents to this court multiple instances where she was precluded from conducting the necessary discovery to make out her gender discrimination claim. There are some categories of discovery we yet are seeking in this particular case. We are seeking to depose two of the assistant deputies within that system, assistant court directors, Beckerheimer and Novak. We have some arguments in regard to Ms. Marion Snow's affidavit in the taking of her deposition, which we've been precluded from doing. We have questions and concerns about the denial of taking the depositions of the comparables in this case, the comparables that plaintiff has reasonably identified. We also have concerns in regard to not receiving any sort of personnel or discipline records for any of the comparables that we've identified. There's a lot of them? Can we just take them in order? No. Oh, well, I can do that. I wanted to get them all out just in case. Okay. Go ahead. Get them all out. There was only one more, if you'd allow me. Sure. And finally, the unitary selection process. So if we could go back and take them one by one or as this court would like. So four at a time? Yes. The one I have a problem with is the comparables. I'm not sure I understand why you need to talk to the people who got the job or who are selected. That seems like the weakest part of your panel, to me, to your panel of people who should be deposed. Well, let's start a step back before taking their depositions and just start with written discovery, interrogatories, and requests for production of documents. We've been denied that as well. Okay. And what's the – So you're not really arguing that we get to depose each person who applied for the job? Your Honor, at this point in time, I'm unsure. But let me tell you why. I haven't seen what's in the file. Well, look – I don't know that I could reasonably stand before this court and say I'm not going to want to depose any of the – You can see why a judge, though, would be hesitant to say that if somebody was denied a job, you have to interview all the people who did pass the selection process. Absolutely. And had I been given – That answers my question. Okay. So you were given the file that was used for – to decide who was going to get the job, but you were not given their – any other information about them? Yes. And let me clarify what file we're talking about. We were awarded – they were awarded to provide us the job selection file, which was the file that the decision-maker had. However, as – especially in the reply brief, we cited multiple testimony – blurbs of testimony from the decision-maker where he didn't use that file. That's not what he used to make the decision. And he also spoke to the assistant – Court directors. Right. And they provided him with information on each of the applicants on that ratings list. That's what he used to make his decision. And he solely relied on what the assistant court directors told him. And he repeatedly said, you know, when I questioned him about what happened, when did it happen, how did it happen, he did not know. He didn't even know who did it. He had no idea. He repeatedly said, my court directors told me this, my assistant court directors, and they're the ones who know. And you were not permitted to depose those people? No, Your Honor. I have been candid with this court already this morning in what we were provided, which was the job selection file and to depose the decision-maker. Now, let me add to that. We were given a limited deposition of the decision-maker. We weren't allowed to question him about any suspensions that occurred. And repeatedly, the appellee argued in both their briefing and testimony in that one deposition that the lack of supervisory wherewithal that they assert caused them not to award Ms. Jones the position came from her 2007 suspension. However, I wasn't able to ask any questions about that suspension or even what this particular decision-maker knew about the particular discipline. Even more egregious, I think, is that the male who did get promoted and who had a suspension that was two years after Ms. Kaisha Jones' suspension, I wasn't able to get any information about that. Instead, going back to the affidavit issue that I wanted to discuss, we were provided with an affidavit from a young lady, Marilyn Snow, who used to be a human resource person but was an assistant port director in another area or capacity. And in her two affidavits, one of them she said, nobody else had any discipline except for the one male. And then in the second one she said, yes, the other lady that you're questioning did end up getting promoted. That's going to be Emily. We've agreed to only use first names at this point. That Emily did get promoted in 2012 and this same decision-maker made the decision. Well, my problem with that is that they are relying on testimony, sworn testimony from this declarant. Not only was the appellee relying on it, the court repeatedly relied on that testimony and we weren't allowed to depose her. I mean, there's case law clearly, the Bobo v. UPS case, where it talks about it, that, you know, it would be an unimaginable, nonsensical world. Can I take you back to – you know this case so much better than I do. I'm sorry. And so you've thrown a lot at us. So you talked about the personnel file, which was provided because it was part of the package. Let me go back to that. There was a package of material that the decision-maker reviewed. Yes. And you were allowed to see that information. Yes. You also want the personnel file. I wanted the personnel files. I was not given the personnel files. But you then said that the decision-maker didn't actually rely on those personnel files. He relied on conversations with individuals. Yes, but let me tell you why. So just in my mind, maybe you have a point about the conversations with individuals, and I don't understand if he was deposed, if he wasn't. But these files that apparently no one relied on, it seems unusual maybe that those would be – that would be proportional and appropriate discovery. But it is, Your Honor, and let me tell you why. Because we have to show pretext. It doesn't go to the prima facie case. That's not where it goes. We have to show that the reason that they're asserting for not promoting her was not the real reason. And in order to do that, I need to see what else is out there about the comparables that were promoted. Now, through the job – Don't we look at what the decision-maker looked at? There could be a whole world of things out there that the decision-maker doesn't know about. And so the things you said in the – you might know about in this conversation, but you said he didn't review these personnel files and that wasn't part of the package that he looked at. See, his not reviewing the personnel files and his not knowing about it is two very different things. I can't even ask that question because I haven't seen the personnel record. So I can't ask him, were you ever aware of XYZ? Were you ever aware of this or that? I can't even do that, Your Honor. So who is it that – you said the – I'm not sure if the supervisors are the same people as the people that the decision-maker spoke to? Yes. There's two of them? Yes. And that was his repeated testimony. I would even go as far as – Does anyone else you want to actually depose that you weren't allowed to? Can you list those people and tell us who they are? Yes. I've asked for the comparables, and I understand your position on that, Judge Rogers. Well, not necessarily my position, but I had a question about that. That's troubling to me. Do you agree that could be troubling? I do agree. Okay. What else? We wanted to depose Ms. Snow. Who's that? She gave two affidavits. Okay. We wanted to have another opportunity to depose the decision-maker once we get the information about the disciplines. We don't have any of that, and we were precluded from asking him anything about it. So there's no other interim decision-makers other than the two? You, Sarah, and those two people are the decision-makers? Yes. The two assistant court directors, the actual decision-maker Blanchard, Ms. Snow. In addition to that, we would ask especially for another human resource person. But the reason we would ask for the – I just want to make clear what the limit is on the debt. I mean, that's a concern. Papers are one thing. A defendant can come up with papers, but it can be burdensome if you have too many people. Especially if they appear on the face not to be relevant, which I don't think is as comfortable as it would be. Absolutely. But let me just speak to the HR person briefly. We need that person because this organization has a policy to prevent discrimination in the job selection process. And part of that process is that certain knowledge, skills, and abilities are used to rate these particular individuals. I don't know what those knowledge, skills, and abilities are because I couldn't ask anybody. So I don't know what they looked at in coming up with these ratings. On top of that, if the policy is in place to prevent discrimination, how does that happen? I want the HR person to explain the policy to me. Because if Ms. Jones was ranked higher than almost every person who got promoted, then how do we keep from discrimination happening? That's the whole point of the rating system. And so we would ask to speak to an HR person to better define that. Of course I want written discovery. And of course plaintiffs don't run out here and just spend money on depositions. I don't know a plaintiff counsel that does that. But I also don't want to close myself in until I see what's out here. And at this point, even someone like the gentleman who's over Blanchard, Christopher Perry, upon becoming aware that he didn't have anything to do with the decision at all, I never would have asked to take his deposition. He was in that original motion because I didn't know anything. So once you get the written discovery, this is just a part of the process. Then you make a more informed decision about who you need to speak to. Thank you. You're welcome. All right. I rely on the briefs. I know I get some time for rebuttal. And I know it's a little – it's a lot. But at the end of the day, it's discovery. Thank you. Good morning. Carolyn L. Massey on behalf of the defendant. Starting off with the discovery issue that plaintiff brought up, one thing that wasn't mentioned is that we're now here on an abusive discretion standard. The plaintiff filed three separate applications requesting discovery from the district court. She did get some, as we've discussed. Each time, the district court said, these are fraud. These are phishing. They're not related to what Mr. Blanchard knew when he was the decision-maker. But that's not the way it works. I mean, the plaintiff has an employment discrimination case. You get to depose. I mean, Blanchard says he spoke to his assistants. How do you not let the plaintiff depose those? It's almost like the judge was limiting the discovery to each issue serially when that's not the way cases are supposed to be handled. I'm very surprised by the restrictions that were imposed. Sure. I think in this context and in the situation of this particular promotion with Homeland Security, Mr. Blanchard was the decision-maker. He was the one who received the information. He also generally knew a lot of these candidates that were on the list. He talked about that in his deposition. He was physically present. He interacted with them. So he did know about them. He did get some information from the assistant court directors, and that's okay. It's okay for him to go out and talk to some other people and rely in part on that information. But what has gone unmentioned here is Mr. Blanchard has repeatedly said that he had a candidate, Ms. Jones, who had suspension for failing to follow a supervisor's order. That's directly related to the supervisory position that Ms. Jones was seeking here. This list of comparables, as Mr. Blanchard testified, everyone was qualified. They all met the qualifications to get on this particular certificate. Mr. Blanchard said it was a really close call. He had to find a way to promote one person over the other of this very great group of people. And in this particular case, Ms. Jones was the only one that had any suspension directly related to the promotion at issue here. And he consistently has relied on that fact in making his decision. In fact, Mr. Blanchard has been very complimentary of Ms. Jones as an employee. She was good at her job. She knew what she was doing. And he says in his EO affidavit and again in his deposition that he just didn't feel like she was ready at the time. So this is what he's relying on. Yes, the assistant board directors contributed somewhat to that. But Mr. Blanchard also observed Ms. Jones at these town hall meetings, and he was familiar with her. These assistant board directors are not going to create issues of fact here on the pretext, where the district court very carefully went through all the different methods of pretext and talked about why Ms. Jones simply doesn't meet them here. She has the burden, once the defendant here articulated their legitimate non-discriminatory reason. Ms. Jones now has the burden to say that was a pretext. There's nothing here to imply any gender discrimination. Women were promoted in each round of these promotions. Mr. Blanchard continuously and always was promoting women. In fact, the evidence that plaintiff relies on to try to show there is some gender discrimination is that two women were not promoted in these first two rounds, and they should have been. So that's true. There were two women who were not promoted that were qualified, but there were two women who were promoted. And these particular women, Electricia and Emily, were actually promoted. And Mr. Blanchard talked about why he didn't promote them at the time. In particular, I don't mean to interrupt because it's helpful what you're saying. These two people, I don't have the names right in front of me. One of them starts with a B. Is it Fusara? The report directors? Yes. Yes. Were they consulted with as part of Blanchard's decision? It's not my understanding from what the record says that he went out and talked to them specifically about her for the promotion, but he was generally aware of some problems with Ms. Jones. He would have known from them about their relative capabilities. I missed the first part of your question. He would have known from them about the relative capabilities of the people who were up for this promotion. Yes. Yes. So what's the theory why those two people couldn't be deposed? Initially, the first discovery order allowed only Mr. Blanchard because he was the decision maker. I'm asking now why they shouldn't say that it was an abuse of discretion not to allow those two people to be deposed given that they were arguably an important source for the information that was used to decide whether to promote these people. That's the only question I'm asking. Okay, sure. With regard to that part of the district court's opinion, it said that first the plaintiff had responded to the summary judgment motion without asking for these additional depositions. She waited seven weeks, actually, after filing it. The delay was part of it, not bringing it up sooner, and that to now seek discovery into what's known as the cat's paw theory, she needed to show some evidence that there wasn't discrimination. Wouldn't there be evidence that wasn't cat paw evidence that you could get from those people? I don't believe here there was. There's no reason to – You don't believe it? Wouldn't it be sufficiently relevant since they were consulted about the relative capabilities of the people that were up for promotion? And you're trying to figure out what was in Blanchard's mind, not under the cat's paw theory, whether these two people were discriminating. I'm not saying that that's – I already believe it's late. We raised late. But that those two people could testify as to what they told Blanchard and could be cross-examined on that, I don't know. I'm having trouble seeing why that wouldn't be part of a discovery, a legitimate part, not irrelevant part of a discovery. Sure, I understand. They certainly could provide some testimony similar to what Mr. Blanchard said. But here I don't believe it was an abuse of discretion to deny those where – Why not? That's my question. Sure, because there's no evidence that they fabricated any evidence. And if she's trying to now get into this theory – They wouldn't have to say there was evidence fabricated. They could just say what they told them. What if they told them she was great? It's possible. And Mr. Blanchard thought she was great. We don't deny that she was good at her job. That's been very consistent. We're just talking about supervising the system. What if they say she's wonderful and the other guy isn't? I don't suspect that that would be – I can't say what the system court directors would say, but – Well, that's what discovery is for. You want us to just, you know, accept everything the defendant says and not let the plaintiff develop her case. Here I believe that the evidence that was produced and what we were required to produce is what Mr. Blanchard had. It's not like she didn't take the discovery that she had an opportunity to take. It's the court totally restricted her ability to take discovery. So how do we know? How do we know that they didn't say that, that she's terrific and these other three people are terrible? Well, Your Honor, she had the opportunity to ask Mr. Blanchard all of those questions, and that did not come up during his deposition. But it's not – you don't have a situation where you're forced to accept the testimony of one person. You get to see whether it's consistent with other people's testimony or with the personnel records. So you can get to test the veracity of some of that. Some of that – I mean, it's one, it's at least a discretion of standard rights. So you get a district judge pretty significant leeway. But two, you talk about the discovery rules have changed in the last couple of years and have a proportionality concept to them. In other words, I can see the district judge trying to follow that direction to be proportional to the case. It's a single plaintiff case. It's not a class action. And so it at least appears that maybe he was trying to allow proportional discovery on finding the things that are most relevant, like those before, and some that are less relevant in his mind. Maybe – I don't know if that's what's happening. Sure. There are several requests, as Ms. Jones' attorney went through. And the district court really took a decent amount of time in the opinions going through each one and talking about how these are too broad. These are not actually tailored to what the decision is going to be. These are not things that the decision-maker had in front of them. Incidentally, I don't believe there was a request for Ms. Snow's deposition. But regardless, a lot of the things – an HR deposition about the merit promotion plan, we produced the plan. And one thing I think that's very important to hear with regards to discovery is the district court pointed out a few times that Ms. Jones is not actually challenging or her complaint does not bring a claim against Homeland Security for its hiring practices. This is a claim about a particular promotion. A lot of what I'm hearing from Ms. Jones and Ms. Brock is that she thinks there's a problem with the way Homeland Security does its promotions. She wants to know how somebody gets on that qualified list and what are the parameters for that. That's not what we're here to talk about. Those might be relevant in a different case. And a lot of the discovery is trying to dig down and unpack the promotion process in the Department of Homeland Security. So you have a situation where somebody says that I made this decision based upon these files that were in front of me and a few conversations. And then the files themselves appear to be – to include an optional filing and then some other material. We have no idea how much of the person's real background is in those files. And it's perfectly reasonable to question whether the decision being made on that limited information is itself pretext for discrimination in the sense that if what you get is a file with two pages in it and an optional third page, and that's the way you make a decision who to promote, one may wonder whether that is just a pretext for picking the three men and one token woman and the next time around picking the four men and one token woman. I mean, this is the nature of how you develop your case. Or if the process doesn't make any sense in relation to what the personnel process is. I mean, maybe he's doing a rogue procedure. I mean, these are just very basic concepts. Right, Your Honor. And the plan that was produced, the Merit Promotion Plan, talks about how the agency does their promotions, how the certificate of eligibles are prepared, which is also part of Ms. Snow's declaration. So to the extent that Mr. Blanchard making this decision could be a pretext, I quite frankly don't see how it could be a pretext for discrimination by race or by gender or by any means because he has a list of people, both men and women. He also, as I mentioned earlier, is generally familiar with these people in the field just from his time working with them. And it's up to the applicant if they choose more or less. But he was able to look at that and distinguish between these people. Some of these candidates have prior supervisory experience. Many of them were appointed to a special anti-terrorism team. Mr. Dandy, he's the male comparator, he did not supervise with the Border Protection, but he spent years with the Detroit Police Department in a supervisory capacity where he learned how to supervise people. So there's enough on this record for Mr. Blanchard to look down and see who he's going to select. Again, a really great group of qualified people. And I just want to remind the court, as the court's aware, we're not here to be a super personnel department. We're here to determine whether or not there was any sex discrimination. And there is just simply nothing in this record that would support sending this case to the jury to decide a sex discrimination issue. So did you argue, did you rely on the recent proportionality provisions that Judge Rager referred to in making your arguments to the district court? The bulk of our arguments before the district court were maybe not explicitly about proportionality, but yes, discussed that. Could be read that way, but didn't explicitly rely on it? Sure. I mean, I think the argument is if you're seeking broad-based discovery on irrelevant information that the decision-maker didn't have, that certainly this case could go very long. Mr. Blanchard's deposition was nearly seven hours, and Ms. Brock is contending that that wasn't enough time. Well, times that by—she wants all these— These arguments that you make have certain purchase, but I'm not sure how they apply to these two interim decision-makers with whom he talked. That doesn't have anything to do with challenging the whole process or turning it into a class action or anything. That's just focused on this particular case. Right. That's correct. And I'll just return to the fact that this is an abusive discretion standard, that at the time he granted the depositions that this was not something before the decision-maker. Thank you. Also, I see I'm almost out of time, but if I could just quickly address the pretext argument of the actual sex discrimination case. This report thoroughly went through all different ways of showing pretext here. I'm just going to focus on the last part, where Ms. Jones is relying on her qualifications with the others in order to establish pretext. And, again, I will try not to repeat myself here, but we are talking about many qualified candidates here. Mr. Blanchard had to focus on different nuances in their experience when making this decision, including these specialized teams and prior supervisory experience. He promoted qualified women and qualified men in all of these rounds. So Plaintiff just can't meet this burden of showing that she was superior to any of them. Quite honestly, she was not. She does talk about two men who did not have supervisory experience. I would just like to point out that both of those men were enforcement officers for five and six years longer than Ms. Jones was. There's a Customs Border Protection Officer position and a Customs Border Protection Enforcement position. They're different positions. The Enforcement position is a little bit more specialized. They have different retirement systems and job descriptions. So Mr. Blanchard was able to look at things like that when deciding to promote these other candidates over Plaintiff. I'll rely on my brief unless there are any other questions. Thank you. I don't know. I would have done a 30 v. 6 because I have no idea who it is. That would have information. But what did you want from that person? I want that person to tell me how the ratings were put together first and foremost. And what I mean by that is the policy itself says that they base these ratings on the knowledge, skill, and abilities of the individuals. And then they present these ratings to the decision-maker who can choose them or not choose them based on the ratings. It seems less and less specific in this case and more sort of a broad kind of institutional approach. No, not at all. Just compared to the two supervisors who were going to talk very specifically about why the actual selection was made and what they said to the decision-makers. No, I don't see it that way. And the reason I don't is because how they put these ratings together and what skills and knowledge. They used bears on who was where on the list. Remember, one of the things that we're challenging is that they were jumping over the women on the list and going to less qualified men. And I want to be able to show even the HR people, when they put the rating together, used the knowledge, skills, and ability and noted that they were less qualified. And all of that was overlooked to promote the men. And this is also just a single plaintiff case. It's not a systemic department-wide discrimination against women, which you say you don't know if you don't have all the information. But the basis of your case is just a single plaintiff. It is a single plaintiff case, but let's not lose sight of the fact that the standard itself is that either she was equally or better qualified along with any other probative evidence of discrimination. So that's where these other women come in. I understand that we don't represent them, nor do we have a class. However, looking at someone like Electrica, who had two supervisory positions, temporary positions, and who was not promoted over two men who had never supervised. So if you're thinking about this in terms of proportionality context, which the rule requires, and I don't know if that's always argued, but that sounds to me to be something that maybe the judge was thinking about. Of course, that's the controlling rule. It seems to me proportionally – proportionality-wise, the things that are most correctly bearing on your client are higher on the list. And things that might bear on other people who you don't represent who do share the same gender might be lower on the list. I can't do anything – And so the judge has to draw a line somewhere. I agree that the judge has to draw a line somewhere, but at least give me written discovery and let me look at it before you tell me I can't speak to anybody. I never saw one piece of paper other than what was in that job selection file, which consisted of the resumes of the people on the list. I just want you all to know what I had. And if you look at what I built out of that, I built a case out of nothing more than a job selection file and one deposition. Given an opportunity, I can make out my case. Isn't that what this is about? I mean, the plaintiff has a high burden. Aren't we given an opportunity to meet that burden? And the requests that we were making were proportional. We didn't ask to depose every male that was on that list. We didn't even ask for information on every male that was on the list. We asked for the people who were promoted instead of her. I mean, we didn't go too far with this. One of the things that we haven't talked about, and I do want to say before I run out of time, is that we did request information from job selection files that Mr. Glantrick was the decision maker after 2011 through his retirement. But let me tell you why I asked for that. I never would have asked for that information because they submitted an affidavit about it, and they relied on it in their brief. They said in 2012 he promoted a woman. Well, I get to look at that now. I want to see who else was on the list, and where was she ranked, and who else did you promote? Because did you just promote the one woman to get rid of us, or did you, again, skip over qualified women so that the men could be promoted? They opened the door for that, not us. And certainly when you read the opinion of the court again, you will see that the judge relied on it. But we don't have any of that information to even counter it, even to pretend to start countering it. They relied on that, and they opened the door for that. Just let me say in regard to Danny and that they're saying Ms. Jones didn't obey the commands of a supervisor, but neither did Danny. He had rules of what he was supposed to do as far as reporting outside work, and he was disciplined for it. He was given a three-day suspension two years after Ms. Jones was given a suspension. I mean, he disobeyed the order as well, or so we think because I haven't seen the discipline. Thank you. Thank you.